IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

A.B., L.B. and R.B.,           *

    Plaintiffs,            *

vs.                            *        CASE NO. 3:08-CV-041 (CDL)

CLARKE COUNTY SCHOOL DISTRICT, *

    Defendant.             *

O R D E R

Defendant's pending motion to dismiss Plaintiffs' appeal of the final order of the Administrative Law Judge ("ALJ") presents two fundamental issues:  (1) whether the mere presence of a disabled child, who allegedly harassed another disabled child, in the same school as the alleged harassment victim amounts to a change in the alleged victim's educational placement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; and (2) whether the law permits parents of one disabled child to obtain sensitive, confidential educational and social services records about another disabled child for purposes of proving their IDEA claim.  As discussed below, under the circumstances of this case, the Court concludes that the answer to both questions is "no."  Therefore, Defendant's motion to dismiss (Doc. 3) is granted as to Plaintiffs' IDEA claim, and Plaintiffs' motion to admit additional evidence (Doc. 28) is denied.  The Court also grants Defendant's motion to dismiss Plaintiffs' remaining federal claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of

the Rehabilitation Act of 1973 ("Section 504"), and 42 U.S.C. § 1983 ("§ 1983").[1] The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which are therefore remanded to the Superior Court of Clarke County, Georgia.

SUMMARY OF ALJ'S FINAL ORDER

Plaintiffs L.B. and R.B. are parents of Plaintiff A.B., a child with significant cognitive, language and physical disabilities. Plaintiffs contend that another student in A.B.'s special education class, who is referred to as "S-1" in this Order, harassed A.B. at school and that Defendant did not take appropriate action after learning of S-1's behavior. Plaintiffs appeal the final order of Georgia Office of State Administrative Hearings ("OSAH") ALJ Kristin L. Miller granting summary determination on Plaintiffs' November 8, 2007 Due Process Request in favor of Defendant Clarke County School District ("CCSD"). The ALJ found that some of Plaintiffs' claims were barred by the statute of limitations, that CCSD did not fail to provide A.B. with a free appropriate public education in accordance with IDEA,[2] that CCSD did not violate IDEA's "stay put" requirement with regard to A.B., and that Plaintiffs had not produced sufficient evidence to prove their claims under the ADA or Section 504.

---

[1] Plaintiffs' motion to consolidate (Doc. 42) is now moot.

[2] Congress generally amended IDEA by enacting the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub. L. No. 108-446, 118 Stat. 2647, which took effect on July 1, 2005. Unless otherwise noted, the statutory citations in this Order refer to IDEA as recodified by IDEIA.

IDEA PURPOSE AND BACKGROUND

The purpose of IDEA is to "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  Congress enacted IDEA's predecessor, the Education of the Handicapped Act, "after finding that school systems across the country had excluded one out of every eight disabled children from classes." *Honig v. Doe*, 484 U.S. 305, 324 (1988).  In some cases, schools used disciplinary measures to bar "hard-to-handle" disabled children from the classroom, and Congress sought, among other things, to prevent schools from unilaterally excluding students from school under the guise of discipline.  *Id.* at 324.

IDEA provides federal assistance to States that provide free and appropriate education ("FAPE") to children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  After a child is identified as disabled, the school, together with the child's parents, must develop, review and revise an "individualized education program" ("IEP") that complies with IDEA's procedures and is "reasonably calculated to enable the child to receive educational benefits." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1280 (11th Cir. 2008) (internal quotation marks omitted); *see also* 20 U.S.C. §§ 1412(a)(4), 1414(d).  To provide FAPE, the IEP need not provide the "best possible" education.

3

*Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 n.1 (11th Cir. 2003).  The school must, however, provide the child with "some educational benefit"—a "basic floor of opportunity." *CP v. Leon County Sch. Bd. Fla.*, 483 F.3d 1151, 1153 (11th Cir. 2007) (internal quotation marks omitted).

One of the key purposes of many IDEA provisions is to ensure parental involvement in the disabled child's education; the core of IDEA "is the cooperative process that it establishes between parents and schools[, and t]he central vehicle for this collaboration is the IEP process." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (internal citations omitted).  If the parents believe that their child has been denied rights under IDEA, "they are entitled to a hearing 'conducted by the State educational agency or by the local educational agency' as determined by state law." *Draper*, 518 F.3d at 1280 (quoting 20 U.S.C. § 1415(f)(1)(A)).  In Georgia, such hearings are conducted by OSAH ALJs.  O.C.G.A. § 50-13-41(a).

During the pendency of a Due Process proceeding, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement[3] of

---

[3]An "educational placement falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996).  Where a child is removed from school because of his behavior problems, the courts construe the term "educational placement" narrowly, looking to the child's specific school. *Id.*  Where a child is moved from a school for reasons other than discipline, the courts employ a looser interpretation, concentrating on the child's general education program.  *Id.*

the child[.]"  20 U.S.C. § 1415(j).  Thus, a school "*shall not* change the current educational placement unless or until it can agree on an alternative placement with the parents, or until the issue is resolved through the administrative hearing process."  *CP*, 483 F.3d at 1156 (citing *Honig*, 484 U.S. at 323).  "With the stay-put provision, Congress has provided procedural protection to disabled children and their parents by preventing unilateral action by school administrators in contravention of a child's or parent's objection, until the completion of review proceedings."  *Id.*  Even where a child poses a danger to other students, a school may not remove the child from school without permission of the parents or until resolution by a hearing officer.  *Id.* at 1156-57 (citing *Honig*, 484 U.S. at 323).

Under IDEA, "[a]ny party aggrieved" by the final decision of an ALJ may bring a civil action in a federal district court.  20 U.S.C. § 1415(i)(2)(A).  The district court "shall receive the records of the administrative proceedings;"[4] "shall hear additional evidence at the request of a party;" and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  *Id.* § 1415(i)(2)(C).

## STANDARD OF REVIEW

CCSD moves to dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The usual

---

[4]The Court received the records of the ALJ proceedings, OSAH-DOE-SE-0812310-29-Miller.  The Court cites these records as Admin. R. ##.

12(b)(6) standard of review does not apply in an IDEA appeal, which the Eleventh Circuit has described as a "judgment on the record." *Loren F.*, 349 F.3d at 1313 (internal quotation marks omitted). Therefore, the administrative record must be the basis for the Court's decision, and the Court must conduct "an entirely *de novo* review of the ALJ's findings." *CP*, 483 F.3d at 1156 n.4.  In a typical IDEA appeal, where the ALJ has conducted a hearing on a Due Process Request, the Court must give "due weight" to the administrative findings, meaning that the district court must give "some judicial deference to local administrative agency judgments, though that's typically limited to matters calling upon educational expertise." *Loren F.*, 349 F.3d at 1314 & n.5 (internal citation omitted).  Here, however, the ALJ decided the matter on CCSD's motion for summary determination, which, as discussed in more detail below, is similar to a motion for summary judgment under Federal Rule of Civil Procedure 56.  The ALJ did not make findings of fact based on a hearing with testimony from witnesses.  Rather, the ALJ viewed the written evidence submitted by the parties, including affidavits, in the light most favorable to Plaintiffs and determined which facts were undisputed.  (ALJ Order at 1.)  The Court concludes that it need not give any special weight to such findings of fact; the Court is perfectly capable of reviewing the evidence that was before the ALJ to determine which facts were or were not disputed.  The Court reviews the ALJ's conclusions of law *de novo*.

THE ALJ ORDER AND THE ADMINISTRATIVE PROCESS

## 1.  **Administrative Process**

The administrative process in this action was governed by the Georgia Department of Education regulations on special education hearing processes, Ga. Comp. R. & Regs. 160-4-7-.18 [hereinafter, the Court cites DOE special education regulations as DOE R. 160-4-7-.##], and the OSAH Administrative Rules of Procedure, Ga. Comp. R. & Regs. 616-1-2-.15 [hereinafter, the Court cites OSAH rules as OSAH R. ##]. After Plaintiffs filed their Due Process Request and the ALJ took up various pre-hearing matters with the parties, CCSD moved for summary determination under OSAH Rule 15.  Summary determination is similar to summary judgment; the movant must show, "based on supporting affidavits or other probative evidence . . . that there is no genuine issue of material fact for determination." OSAH R. 15(1).  The party opposing the motion for summary determination "may not rest upon mere allegations or denials, but must show, by affidavit or other probative evidence, that there is a genuine issue of material fact for determination in the hearing."  OSAH R. 15(3).  The ALJ may decide that an evidentiary hearing is required and that summary determination is thus inappropriate, OSAH R. 15(6), but if the ALJ finds that the issue is proper for summary adjudication, then no hearing is required, OSAH R. 15(7).

CCSD supported its motion for summary determination with affidavits of several CCSD employees, though Plaintiffs did not have

an opportunity to cross-examine them. (Compl. ¶ 30.) Although CCSD did produce some documents to Plaintiffs, Plaintiffs contend that the ALJ erroneously denied Plaintiffs access to information they needed to oppose CCSD's motion for summary determination. Thus, Plaintiffs contend the ALJ "failed to hold or permit a fair hearing process which met minimal constitutional and statutory standards." (Compl. ¶ 14.) Neither the OSAH Administrative Rules of Procedure nor the DOE special education hearing process regulation provides for discovery prior to summary determination.[5] OSAH Rule 38 states, "Discovery shall not be available in any proceeding before an ALJ except to the extent specifically authorized by a statute or rule." Under DOE Rule 160-4-7-.8, parents have a right "to inspect and review any education records relating to their children that are collected, maintained, or used" by the school. DOE R. 160-4-7-.8(2)(a) (citing 34 C.F.R. § 300.613(a)).[6] However, "[i]f any

---

[5]Citing Rule 56(f) of Georgia's Civil Practice Act, O.C.G.A. § 9-11-56(f), Plaintiffs argued to the ALJ that CCSD's motion for summary determination should be held until trial because Plaintiffs had not had an adequate opportunity to discover information within CCSD's control and would thus not be able to present facts essential to justify any opposition to CCSD's motion for summary determination. (Admin. R. 43, Pls.' Mot. to Carry CCSD Fact Mot. to Trial.) The Civil Practice Act does not apply to proceedings under the OSAH Administrative Rules of Procedure. *See, e.g., Fulton County Bd. of Assessors v. Saks Fifth Ave., Inc.*, 248 Ga. App. 836, 838, 547 S.E.2d 620, 623-24 (2001).

[6]Also, DOE Rule 160-4-7-.18(1)(g)(5) provides that parents involved in a due process hearing may obtain records concerning the student from the school before the hearing, and DOE Rule 160-4-7-.18(1)(g)(9) gives parents the right to have the school disclose a list of all potential witnesses, including their addresses and matters upon which they may testify, prior to the hearing.

8

education record includes information on more than one student, the parent(s) of those students have the right to inspect and review *only the data relating to their child or be informed of that specific information*." DOE R. 160-4-7-.8(2)(e) (emphasis added) (citing 34 C.F.R. § 300.615)). Under these rules, the ALJ permitted Plaintiffs access to A.B.'s educational records that did not contain information about S-1 and denied Plaintiffs access to S-1's educational records. While an ALJ has discretion, under OSAH Rule 2(2), to "relax" the OSAH rules of procedure in an "appropriate" case "where such relaxation will facilitate the resolution of the matter without prejudice to the parties and will not be inconsistent with the requirements of the [Administrative Procedure Act] or other applicable statute," the ALJ did not relax the rules in this case.

Plaintiffs contend that the ALJ erred in several material ways. First, Plaintiffs argue that the ALJ erred in denying Plaintiffs access to "all A.B.'s records[7] and other records concerning his abuse

---

[7]Plaintiffs argued to the ALJ that CCSD did not produce (1) progress reports regarding A.B., (2) electronic copies of certain data and graphs which Plaintiffs received in hard copy, (3) a "description or report or contemporaneous report" regarding the May 2005 incident, or (4) records regarding the placement of S-1. (Admin. R. 58, Pls.' Notice of CCSD's Failure to Produce A.B.'s Records.) According to CCSD, daily progress reports regarding A.B. were not maintained as part of A.B.'s educational record. (Ex. 1 to *Id.*) CCSD represented to the ALJ that although no electronic versions of the records were maintained as part of A.B.'s educational records, CCSD did email L.B. electronic versions of certain graphs that had already been produced in hard copy. (Admin. R. 70, CCSD's Resp. to Pls.' Notice of CCSD's Failure to Produce A.B.'s Records at 3.) As for the other two omissions, the ALJ expressly prohibited Plaintiffs access to records that were part of the record of another student or included information regarding a student other than A.B., so CCSD did not produce those records. (*Id.* at 4; Admin. R. 35, Order at 1-2, Jan. 16,

by other students including S-1 while in school." (Compl. ¶ 18.)
Second, Plaintiffs contend that the ALJ erred by denying Plaintiffs
access to the records of S-1. (Compl. ¶ 25.) Finally, Plaintiffs
argue that the OSAH rules of procedure on summary determination, in
conjunction with the Georgia DOE hearing process rules, violate IDEA,
Georgia law, and the constitutions of the United States and Georgia
because Plaintiffs were "denied discovery, denied [A.B.'s]
educational records, denied S-1's records, and had no formal
opportunity to gain admissible evidence from [CCSD] teachers and
administrators to create a question of fact." (Compl. ¶¶ 26-27.)

## 2.   ALJ Findings of Undisputed Facts

The ALJ made the following findings of undisputed facts, viewing
the evidence in the light most favorable to Plaintiffs. Unless
otherwise noted, Plaintiffs do not dispute these facts. A.B. is a
fourteen-year-old[8] boy with significant cognitive, language, visual
and physical disabilities. As a student with a disability, he is
covered by IDEA. (Admin. R. 80, Final Decision Order Granting Mot.
for Summ. Determination ¶ 1 [hereinafter ALJ Order]; Compl. ¶ 4.)
A.B. is non-verbal, and his current placement is the severe
intellectual abilities program at Clarke Middle School in the Clarke

---

2008 (requiring CCSD to produce A.B.'s "full educational record" but
providing that Plaintiffs' access to the record "shall not include access
to any records that [CCSD] contends are part of the educational record of
another student or include information regarding a student other than
[A.B.]").)

[8] When the ALJ issued her order, A.B. was thirteen. He has since
turned fourteen.

County School District.  (ALJ Order ¶ 1; Admin. R. 30, Pls.' 2d Am. Compl. before the ALJ ¶ 4 [hereinafter Admin. Compl.]; Compl. ¶ 34.)

During the 2004-05 school year, A.B. was a student in Deborah Kincaid's class for students with severe/profound intellectual disabilities at Oglethorpe Avenue Elementary School in the Clarke County School District.  (ALJ Order ¶ 2; Admin. Compl. ¶ 14; Compl. ¶ 49.)  During the spring of 2005, another student in Ms. Kincaid's elementary school class, S-1, had inappropriate contact with A.B. during school.  (ALJ Order ¶ 3; Admin. Compl. ¶ 14; Compl. ¶ 49.) Specifically, S-1 groped and squeezed A.B.'s sexual parts and "humped" A.B. while making sexual noises; both children were fully clothed.  (ALJ Order ¶ 4 & n.1; Admin. Compl. ¶ 15; Compl. ¶ 50; *see also* Admin. R. 73, Ex. 1, L.B. Aff. ¶ 5, Jan. 28, 2008.)  In addition, S-1 grabbed the teachers' breasts and verbalized "titties" and also imitated masturbation and said "get my dinkie."[9]  (ALJ Order ¶ 4; Admin. Compl. ¶ 16; Compl. ¶¶ 49-51; *see also* Admin. R. 73, Ex. 1, L.B. Aff. ¶ 5.)  Ms. Kincaid told A.B.'s mother, L.B., about this behavior by telephone on May 6, 2005, and told L.B. that S-1 had targeted A.B., another student, and teachers.[10]  (ALJ Order ¶ 4; Admin. Compl. ¶ 18; Compl. ¶ 52.)  In addition, Ms. Kincaid sent a

---

[9]The parties appear to agree that this type of behavior in S-1 is learned behavior that S-1, a child with significant cognitive and language disabilities, likely learned as a result of being abused and/or neglected. (*See, e.g.,* Admin R. 73, Ex. 13, Police Report at 4-5.)

[10]Though CCSD personnel generally referred to S-1 as "other student" in their communications with A.B.'s parents, L.B. and R.B. were able to figure out who S-1 is.

letter dated May 5, 2005 to L.B. and R.B. explaining that a student in her class "inappropriate[ly] and purposeful[ly]" "attempts to grope (grab genital area)" students and teachers in the class. (Admin. R. 73, Ex. 14.)  Ms. Kincaid stated in the letter that there had been meetings regarding S-1 with the principal, social worker, psychologist and parent and that the school was using isolation precautions and monitoring procedures.  (*Id.*)  According to Plaintiffs, school officials did not tell L.B. and R.B. how long S-1 had been engaging in the inappropriate conduct with regard to A.B., how often it occurred, or when S-1 targeted A.B.[11] Plaintiffs contend that CCSD personnel failed to provide L.B. and R.B. with sufficient details about S-1's conduct. (Admin Compl. ¶¶ 17-18; Compl. ¶¶ 55, 58.)

L.B. filed a report with the Athens-Clarke County Police Department on May 7, 2005, relaying the information which Ms. Kincaid had reported to her regarding S-1's conduct. (ALJ Order ¶ 5.)  The police interviewed the principal of Oglethorpe Elementary, who provided the police with information about S-1, his family and school history. (ALJ Order ¶ 5; Admin R. 73, Ex. 13, Police Report at 3-5.) The police report shows that the police intended to communicate with the Division of Family and Children Services ("DFACS") about the

---

[11]According to L.B., L.B. spoke with Chris Walker, a CCSD consultant, during May 2005 about the contact between S-1 and A.B., and Walker told L.B. that if S-1 was the student Walker was "thinking of," the child's groping behavior was a long term issue and DFACS was involved.  (Admin. R. 73, Ex. 1, L.B. Aff. ¶ 6.)

matter, and the police communicated that intention to L.B.   (ALJ Order ¶ 5; Admin R. 73, Ex. 13, Police Report at 5.)

On May 11, 2005, an Oglethorpe Elementary administrator reported to Clarke County DFACS suspected child abuse or neglect with respect to S-1.  (ALJ Order ¶ 7.)  The substance of that report is not in the record, but it is undisputed that A.B. was not identified as a victim in the report to DFACS.[12]  (ALJ Order at 3 n.2.)  The ALJ based this finding upon the affidavit of Amy Spires, a CCSD social worker, which Plaintiffs contend contains inadmissible hearsay and refers to an unauthenticated exhibit.  (*Id.* ¶ 7; *see also* Admin. R. 55, Spires Aff., Jan. 3, 2008.)  The affidavit has one exhibit, which is a letter from Shannon Lavender of DFACS to Scarlett Dunne, principal of Oglethorpe Elementary, acknowledging Principal Dunne's May 11, 2005 report of possible child abuse and neglect.  (Ex. A to Admin. R. 55, Spires Aff.)  Ms. Spires stated in her affidavit that the letter referenced S-1 and that she received a copy of the letter from DFACS in response to her November 2007 request to DFACS for a copy of information regarding a May 2005 report by CCSD personnel regarding S-1.  (Admin. R. 55, Spires Aff. ¶¶ 6-8.)[13]

---

[12]Plaintiffs now claim that CCSD personnel told L.B. that DFACS was involved in investigating S-1's conduct with regard to A.B. and that this statement was a misrepresentation that induced Plaintiffs from taking further action.  (Compl. ¶ 64.)

[13]Plaintiffs also take issue with two matters related to how the ALJ handled the DFACS report matter.  First, CCSD admitted in its initial answer to Plaintiffs' Due Process Request that it did not make a report to DFACS regarding the conduct of S-1.  (Admin R. 3, CCSD Answer ¶ 3.) However, in response to Plaintiffs' Second Amended Complaint before the

A.B. and S-1 both remained in Ms. Kincaid's class for the remainder of the 2004-05 school year.[14,15]   (ALJ Order ¶ 8.)   CCSD personnel informed L.B. that S-1 and his family were moving and that he would not attend the same school as A.B. the following year. (*Id.*) Plaintiffs did not request an IEP to ask that S-1 be barred from attending the same school or classroom as A.B.   (*Id.* ¶ 9.) Plaintiffs first filed a Due Process Request regarding the May 2005 incident on November 8, 2007.  (*Id.* ¶ 10.)  According to Plaintiffs, CCSD employees told L.B. and R.B. that S-1 would not be placed in "classes" with A.B. in subsequent school years.  (Admin. Compl. ¶ 24; Compl. ¶ 63.)   CCSD denies making such a promise, and the ALJ found that CCSD did not make such a promise, even orally, noting that the

---

ALJ, CCSD amended its answer and stated that it did make a report regarding S-1's conduct in spring 2005.  (Admin R. 47, CCSD Answer to 2d. Am. Compl. ¶ 21.)   The ALJ permitted that amendment.  (ALJ Order at 3 n.2.)   Second, CCSD inadvertently produced to Plaintiffs' counsel an unredacted letter from a DFACS social service case manager to the principal of Oglethorpe Elementary regarding the May 11, 2005 report to DFACS.  (Admin. R. 23.)   The ALJ struck the unredacted document from the record and ordered Plaintiffs' counsel to destroy it and not to disclose the contents to anyone, including Plaintiffs.  (Admin. R. 35, Order at 2, Jan. 16, 2008.)   The unredacted letter identified the names of children other than A.B., but the ALJ determined that the fact that A.B. was not listed as a victim was immaterial.  (ALJ Order at 3 n.2.)

[14]According to Plaintiffs' initial Due Process Request, though S-1 remained in the same classroom as A.B., CCSD built a divider to separate the boys, and they had limited contact for the remainder of the year. (Admin. R. 1 at 6, Due Process Request, Nov. 8, 2007.)

[15]Plaintiffs allege that A.B. reacted adversely to S-1's presence during the latter portions of the 2004-05 school year and that S-1's actions interfered with the provision of FAPE to A.B. (Compl. ¶ 53.) The ALJ did not make any findings of fact on this issue, presumably because the ALJ determined that Plaintiffs' claims related to the 2005 incident were barred by the statute of limitations.

ALJ would expect such a promise to be made part of A.B.'s IEP or confirmed in writing. (ALJ Order at 4 ¶ 8, 8 & n.6.) Plaintiffs pointed the ALJ to L.B.'s affidavit as evidence of the alleged promise, but the ALJ concluded that the affidavit did not support Plaintiffs' allegations regarding the purported promise. (ALJ Order at 8.) In her affidavit, L.B. stated that she "understood from [CCSD] that S-1 would no longer be in [A.B.'s] class . . . that he was moving, that there were DFACS reports that he had abused my son as the victim and that [S-1] rarely came to school." (Admin. R. 73, Ex. 1, L.B. Aff. ¶ 18.) The ALJ determined that, at best, L.B.'s "'understanding' consist[ed] of her interpretation (or misinterpretation) of generalized information provided by school district personnel" and that the "understanding" was not based on a specific material fact misrepresentation by CCSD. (ALJ Order at 8.)

In the fall of 2007, A.B.'s placement was the severe intellectual abilities program at Clarke Middle School ("CMS"). In October 2007, S-1 enrolled in CMS, his home attendance zoned school, and was assigned to the same class as A.B. (*Id.* ¶ 11.) On October 23, 2007, L.B. became aware that S-1 was in A.B.'s class, and she asked A.B.'s teacher for A.B. and S-1 to be separated immediately and to permit no further contact between them. (*Id.*) CCSD began serving A.B. and S-1 in separate classrooms at CMS on October 29, 2007, and

the children do not have direct contact during the day.[16]   (*Id.* ¶ 12.)
According to Plaintiffs, L.B. and R.B. have, since October 2007 kept
A.B. from school for part of each school day in order to avoid S-1.
(Compl. ¶ 89.)   During that time, L.B. and R.B. have provided
educational services to A.B. in their home.   (*Id.*)

### 3.   ALJ Conclusions of Law

Plaintiffs filed a Due Process Request on November 8, 2007.   In
the Due Process Request and in subsequent amended complaints before
the ALJ, Plaintiffs made the following claims: (1) the May 2005
actions of S-1 and inactions of CCSD personnel created a hostile
educational environment for A.B. and therefore denied A.B. FAPE and
violated A.B.'s rights under Section 504 and the ADA (Admin. Compl.
¶¶ 93-99); (2) the October 2007 assignment of S-1 to A.B.'s class and
the continued assignment of S-1 to CMS denies A.B. FAPE and violates
A.B.'s rights under Section 504 and the ADA (*Id.* ¶¶ 79-85); and (3)
the continued assignment of S-1 to CMS pending the outcome of the Due
Process Request violates IDEA's "stay put" requirement (*Id.* ¶¶ 100-
101).[17]

_____

[16]Plaintiffs contend that when L.B. initially requested that the two
children be separated, she was told that separate classrooms would not
make a difference because the school put classes together for certain
activities, such as breakfast, lunch and physical education.   (Admin.
Compl. ¶ 28; Compl. ¶ 69.)   However, in October 2007, CCSD implemented a
classroom arrangement under which A.B. and S-1 would be served in separate
classrooms and not have any direct contact with each other during the day.
(*E.g.*, Admin. R. 53, Stevenson Aff. ¶ 7, Jan. 18, 2008.)

[17]Plaintiffs repeat these claims in their Complaint in this Court, and
they also contend that CCSD violated IDEA and Section 504 by failing to
provide Plaintiffs with A.B.'s records or information and by failing to

The ALJ found that Plaintiffs' IDEA claim based on the May 2005 incident was barred by IDEA's two-year statute of limitations because L.B. and R.B. had knowledge of S-1's conduct toward A.B. in May 2005 but did not file a Due Process Request until more than two years later, on November 8, 2007. (ALJ Order at 6.)   The ALJ also concluded that neither of IDEA's exceptions to the statute of limitations applied.   First, the "specific misrepresentation" exception did not apply because Plaintiffs did not point to a specific misrepresentation by CCSD that it resolved the problem forming the basis of the complaint.[18]   (*Id.* at 7-8.)   As discussed above, Plaintiffs argued that CCSD promised L.B. and R.B. that S-1 would never again be placed in the same classroom or school as A.B., but the only proof Plaintiffs offered on that issue was the affidavit of L.B., which the ALJ found did not create a genuine issue of material fact because L.B. did not assert that CCSD ever explicitly made such a promise.   (*Id.* at 8.)   Second, the "withholding

---

allow parent participation in A.B.'s placement.   (Compl. ¶¶ 97-105.) Specifically, Plaintiffs contend that CCSD failed to provide L.B. and R.B. with sufficient information about the May 2005 incident (Compl. ¶¶ 27, 57-58), that CCSD refused to provide Plaintiffs with S-1's records (Compl. ¶¶ 27, 83), and that the placement of S-1 in A.B.'s school constituted an alteration in A.B.'s placement without parent permission (Compl. ¶ 85). Plaintiffs also contend that CCSD breached its state law duties to maintain a safe environment for A.B. and to report child abuse (Compl. ¶¶ 127-136) and that CCSD's acts and omissions violate the Georgia Constitution and the United States Constitution (Compl. ¶¶ 137-143).

[18]The ALJ analogized IDEA's "specific misrepresentation" exception to Federal Rule of Civil Procedure 9(b), which requires that fraud be plead with particularity, meaning that the party must set forth the who, what, when, where and how of the alleged misrepresentation.   (ALJ Order at 7.)

information" exception did not apply because CCSD provided A.B.'s parents with "all necessary and appropriate information." (*Id.* at 9.) CCSD provided L.B. and R.B. with enough information for them to file a detailed police report regarding S-1's conduct toward their son, and the ALJ determined that various laws prohibited A.B.'s parents from obtaining personal and confidential information regarding S-1 and his disabilities. (*Id.*)

The ALJ rejected Plaintiffs' claim that CCSD denied A.B. FAPE in 2007 when CCSD assigned S-1 to the same school as A.B. and refused to assign S-1 to a different school at Plaintiffs' request. (*Id.* at 10-11.) First, the ALJ found that the mere presence of S-1 in the school building did not amount to a change in A.B.'s educational placement. (*Id.* at 10.) Second, the ALJ concluded that while student-on-student harassment may in some instances be so severe and prolonged that it deprives a child of educational benefits, thus denying FAPE, the undisputed facts did not reveal any such harassment of A.B. (*Id.* at 10-11.) In addition, because the ALJ found that the presence of S-1 in the same school building did not amount to a change in A.B.'s educational placement, the ALJ found no merit in Plaintiffs' claim that CCSD violated IDEA's "stay put" requirement by allowing S-1 to attend CMS during the pendency of Plaintiffs' Due Process Request. (*Id.* at 12-13.)

Finally, the ALJ denied other pending motions, including Plaintiffs' motion to carry any factual motions to trial or permit

discovery (Admin. R. 43).  (ALJ Order at 13.)  The ALJ found that Plaintiffs did not show a good faith basis for disputing CCSD's material facts.  (*Id.*)  As a result, the ALJ concluded that no depositions were authorized and that Plaintiffs should not be permitted to access S-1's confidential educational records.  (*Id.*)

DISCUSSION

## I.   IDEA Claims

The ALJ concluded, without permitting Plaintiffs to discover certain information which Plaintiffs requested, that no genuine issues of material fact existed and that CCSD was entitled to prevail as a matter of law.  Plaintiffs argue that the ALJ should have allowed them to conduct discovery before ruling on CCSD's motion for summary determination and that the Court should now allow Plaintiffs to submit additional evidence under 20 U.S.C. § 1415(i)(2)(C), which provides that the district court "shall hear additional evidence at the request of a party[.]"  Plaintiffs also seek, under Federal Rule of Civil Procedure 56(f), discovery that they contend will enable them to show genuine issues of material fact on their claims. Plaintiffs assert that with the additional evidence, they will be able to show that IDEA's statute of limitations does not bar Plaintiffs' claims arising out of the May 2005 incident, that the presence of S-1 in the same school as A.B. will result in a denial of FAPE to A.B., and that CCSD violated stay put.  CCSD argues that it was prohibited, under both IDEA and the Family Educational Rights and

Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, from disclosing the requested information during the administrative proceeding, that the Court should not permit access to that information now, and that there is no genuine issue of material fact that the May 2005 claims are barred, that CCSD did not violate stay put, and that A.B.'s current placement is reasonably calculated to provide A.B. with educational benefit, notwithstanding S-1's presence in the same building.

A.   Standards for Supplementing the Record

The questions for this Court on Plaintiffs' motion to supplement the record are (1) whether the discovery Plaintiffs seek may be made available to Plaintiffs under the law and (2) whether the additional discovery would be sufficient to create a genuine issue of material fact on Plaintiffs' claims.  Under IDEA, the district court "shall hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C).  According to the Eleventh Circuit, district courts have discretion to take additional evidence on an IDEA appeal. *Sch. Bd. of Collier County, Fla. v. K.C.*, 285 F.3d 977, 981 (11th Cir. 2002).  The party seeking to introduce the additional evidence must provide a "solid justification" for the additional evidence.  *Id.* "The starting point for determining what additional evidence should be received . . . is the record of the administrative proceeding." *Walker County Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000) (internal quotation marks omitted).  Factors to

consider include: "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.* (internal quotation marks omitted). Furthermore, the "availability or unavailability of discovery procedures in the state administrative system . . . might properly influence the extent to which the district court allows discovery in the review proceedings before deciding whether to admit or refuse any proffered evidence." *Id.* at 1299 n.12.

IDEA provides that a party to a due process hearing has a right to "present evidence and confront, cross-examine, and compel the attendance of witnesses[.]" 20 U.S.C. § 1415(h)(2). Plaintiffs contend that they are not able to exercise this right because they have not been allowed to discover certain evidence, and they ask the Court for a continuance to conduct discovery under Federal Rule of Civil Procedure 56(f). Under Rule 56(f), the Court may order a continuance to permit discovery if Plaintiffs show by affidavit that they "cannot present facts essential to justify [their] opposition" to CCSD's motion. The Court has wide discretion in ruling upon a Rule 56(f) motion. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). "Whether to grant or deny a Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on

21

the opposing party." *Id.* If the requested discovery would place a burden on CCSD and it is unlikely that further discovery would establish Plaintiffs' claims, the Court should deny Plaintiffs' Rule 56(f) motion. *Id.* The "'hope' or 'hunch' that evidence creating an issue of fact will emerge at trial is insufficient" to warrant discovery under Rule 56(f). 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2741.

The additional discovery Plaintiffs seek in this action can be divided into roughly two categories: (1) discovery regarding S-1's conduct and CCSD's response in May 2005 and (2) discovery regarding the placement of S-1 during 2007. To obtain this information, Plaintiffs would like to depose several CCSD employees, and Plaintiffs seek production of all CCSD documents relating to A.B. and S-1, as well as all DFACS documents regarding the May 2005 report.[19] CCSD argues, and the ALJ found, that it is unlikely that this discovery will create a genuine issue of material fact on Plaintiffs' claims. CCSD further contends that the Court should not order production of this information because doing so would erode the protections of IDEA and FERPA.

---

[19]Under Georgia law, records concerning reports of child abuse in the custody of DFACS are confidential, and access to those records is prohibited. O.C.G.A. § 49-5-40(b). A court, by subpoena, may have reasonable access to DFACS records concerning child abuse if the records are necessary for determination of an issue before the court, though the court must first make an *in camera* examination of the records to confirm that disclosure is necessary. O.C.G.A. § 49-5-41(a)(2). As discussed below, S-1's DFACS records are not necessary to resolve any issues in this action.

Like Georgia's DOE rules, IDEA and FERPA prohibit dissemination of educational records to third parties without consent.  IDEA requires that schools take appropriate action, in accordance with FERPA, to protect "the confidentiality of any personally identifiable data, information, and records collected or maintained by the [school]."  20 U.S.C. § 1417(c); *accord* 20 U.S.C. § 1412(a)(8). Under regulations promulgated pursuant to IDEA, parents must be permitted to "inspect and review any education records relating to their children that are collected, maintained, or used by" the school, and the right to inspect and review education records includes a right to explanations and interpretations of the records. 34 C.F.R. § 300.613.  However, "[i]f any education record includes information on more than one child, the parents of those children have the right to inspect and review *only the information relating to their child* or to be informed of that specific information."  34 C.F.R. § 300.615 (emphasis added).  Parental consent "must be obtained" before personally identifiable information is disclosed to third parties unless disclosure is authorized by FERPA's regulations on disclosure without prior consent.  34 C.F.R. § 300.622(a); *accord* 20 U.S.C. § 1232g(b)(1).

Records protected by FERPA may be released pursuant to a judicial order or lawfully issued subpoena, as long as the student's parents are notified before the school complies with the subpoena or

order.[20]   20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i).
Thus, the Court may order (and the ALJ could have ordered) CCSD to
produce the records regarding S-1.  The ALJ found that Plaintiffs did
not show "a good faith basis for disputing the material facts relied
upon by [CCSD] in support of its Motion for Summary Determination"
and therefore did not permit Plaintiffs to access S-1's confidential
educational records.  (ALJ Order at 13.)

     In  determining  whether  to  order  disclosure  of  protected
education records, the courts generally require the party seeking
disclosure to "demonstrate a genuine need for the information that
outweighs the privacy interest" of the student.  *See, e.g., Rios v.
Read*, 73 F.R.D. 589, 599 (E.D.N.Y. 1977) (finding that plaintiff
class of Hispanic students that were allegedly discriminated against
by  the  school  could  obtain  records  regarding  progress  of  the
students—who were class members—because it would be impossible to
prove violations of Title VI without those records).   Thus, to
overcome S-1's privacy interest in his education records, Plaintiffs
must  show  that  there  is  at  least  some  likelihood  that  they  will

---

     [20]None of FERPA's other exceptions applies here to authorize
disclosure of S-1's educational records to Plaintiffs.  The one exception
that contemplates dissemination of certain records to victims of alleged
violent crimes at school applies only to postsecondary institutions.  That
regulation permits (but does not require) a postsecondary institution to
disclose certain information "to a victim of an alleged perpetrator of a
crime of violence" without consent, but the *only* information that may be
disclosed  without  consent  is  the  "final  results"  of  a  disciplinary
proceeding conducted by the institution with respect to the alleged crime
or offense.  34 C.F.R. § 99.31(a)(13).

obtain from the records relevant information that will create a
genuine issue of material fact on Plaintiffs' claims.

B.   Claims Arising out of the May 2005 Incident

The ALJ concluded that Plaintiffs' claims arising out of the May
2005 incident were barred by the statute of limitations because
neither of IDEA's exceptions to the statute of limitations applied.
(ALJ Order at 7-9.)   Plaintiffs were required to make their Due
Process Request "within 2 years of the date [they] knew or should
have known about the alleged action that form[ed] the basis of the
complaint[.]"   20 U.S.C. § 1415(f)(3)(C).   IDEA's statute of
limitations is tolled if the parent was prevented from making a Due
Process Request because the local educational agency either (1) made
"specific misrepresentations" that it had resolved the problem
forming the basis of the complaint, or (2) withheld information that
was "required [under IDEA] to be provided to the parent." *Id.* §
1415(f)(3)(D).

Plaintiffs contend that they did not have sufficient knowledge
to make a Due Process Request in May 2005.   In the alternative,
Plaintiffs contend that both exceptions to IDEA's statute of
limitations apply in this case and that the ALJ should not have ruled
on the applicability of either of these exceptions without some
opportunity for Plaintiffs to discover additional information
regarding the May 2005 incident and S-1. As discussed below, the
Court finds that additional evidence will not help Plaintiffs show

25

that they did not have enough information to make a Due Process Request in May 2005 or to show that one of IDEA's exceptions to the statute of limitations applies.

   *1.   Insufficient Information for Due Process Request*

   Plaintiffs first argue that they did not have enough information to make a Due Process Request in May 2005 (or within two years thereof).  Specifically, Plaintiffs contend that they were never told "what really happened" in May 2005.  They compare their situation to the facts of *Draper v. Atlanta Independent School System*, 518 F.3d 1275.  In *Draper*, the issue was whether a student's parents should have known that their child had been misdiagnosed as having mild intellectual disabilities ("MID") and wrongly placed in a self-contained MID classroom when the student really had the specific learning disability of dyslexia.  The school district in *Draper* adamantly maintained that the student was MID until the student was finally reevaluated, though the school district's position during litigation was that the parents should have known, based on their own observations of their child, that the school had misdiagnosed him.[21] The Eleventh Circuit concluded that this position was untenable because there was no way for the parents to know (rather than merely

_____

   [21]Moreover, the school district in *Draper* argued, even after the reevaluation and after the ALJ and district court found that there had been a misdiagnosis, that the student had not actually been misdiagnosed. *Draper*, 518 F.3d at 1287-88.

suspect) "something that the trained professionals of the School System did not admit they knew." *Draper*, 518 F.3d at 1288.

Unlike *Draper*, the undisputed facts here show that Plaintiffs here had significant information regarding the May 2005 incident, which they contend resulted in a denial of FAPE.  In May 2005, L.B. and R.B. knew that another child in their son's class had groped and "humped" A.B., that teachers believed the other child had targeted A.B. and another student, and that the other child also targeted the teachers.  Based on this information, L.B. was able to make a detailed report to the police.  Furthermore, Plaintiffs believed in May 2005 that A.B. reacted adversely to S-1's presence in the classroom and that S-1's conduct interfered with the provision of FAPE to A.B.  (Compl. ¶ 53.)  No additional evidence from S-1's confidential records will change which facts Plaintiffs knew in May 2005 or whether these facts were sufficient to make a Due Process Request.  Therefore, the Court declines to permit discovery and supplementation of the record on this issue.  The only remaining question is whether there is a genuine issue of material fact that Plaintiffs had insufficient information to make a Due Process Request.  Because Plaintiffs believed in May 2005 that A.B. was not receiving FAPE due to the conduct of S-1, the Court finds that Plaintiffs had all the information they needed to make a Due Process Request in May 2005 or within two years.  The ALJ did not err in reaching this conclusion.

27

2.    *"Specific Misrepresentation" Exception*

Plaintiffs contend that CCSD made two misrepresentations that it had resolved the problem forming the basis of the complaint, which Plaintiffs relied on in deciding not to make a Due Process Request in May 2005 or within two years thereof.  First, Plaintiffs assert that CCSD misrepresented that school personnel had made a DFACS report regarding S-1's conduct.  Second, Plaintiffs argue that CCSD promised that A.B. and S-1 would not be in the same "class" during subsequent school years.  The ALJ found that Plaintiffs did not allege or show that CCSD made a "specific misrepresentation" that it resolved the problem forming the basis of Plaintiffs' complaint.

Regarding the DFACS report, Plaintiffs argue that CCSD misrepresented that school personnel had made a DFACS report regarding S-1's conduct in May 2005.  In particular, Plaintiffs contend that CCSD employees told them that a DFACS report had been made regarding S-1's conduct toward A.B. (Admin. R. 73, Ex. 1, L.B. Aff. ¶ 15.)  The undisputed evidence shows that CCSD never made a DFACS report that mentioned A.B.  No additional evidence is needed for Plaintiffs to show that there is a genuine issue of material fact that CCSD personnel made a misrepresentation regarding the DFACS report; a reasonable factfinder could conclude that CCSD told L.B. that it had made a report concerning S-1's conduct *related to A.B.*, which it did not.

28

However, even if the Court were to conclude that CCSD made *no* report to DFACS regarding S-1's conduct, that failure would not resolve Plaintiffs' IDEA claims that A.B. did not receive FAPE in 2005.  The purpose of a Due Process Request is to vindicate IDEA rights, not to produce reports of suspected child abuse to state authorities; the outcome of a Due Process Request is a determination of whether the school met IDEA's requirements of providing FAPE in the least restrictive environment.  Furthermore, Plaintiffs have not alleged or shown that they would have made a Due Process Request to make sure that the desired DFACS report was made; rather, L.B.'s own affidavit strongly suggests that if she had been told that CCSD did not make a report to DFACS regarding A.B., she would have simply made one or followed up with the police on their promise to report S-1's conduct to DFACS.  (Admin. R. 73, Ex. 1, L.B. Aff. ¶ 16.)  For this reason, the Court concludes that any misrepresentation regarding the DFACS report is not the type of misrepresentation that tolls IDEA's statute of limitations.

As to CCSD's alleged misrepresentation that S-1 and A.B. would not be placed in the same "class" during subsequent school years, Plaintiffs now assert that they were "told that they need not contest [A.B.'s] placement" in May 2005.  (Pls.' Reply in Supp. of Mot. to Admit Additional Evidence 3.)  However, the undisputed evidence shows that CCSD made no such specific misrepresentation—even L.B. could not point to a specific statement by CCSD that A.B. and S-1 would never

be in the same class again.  (Admin. R. 73, Ex. 1, L.B. Aff. ¶ 18.)
Nonetheless, it is undisputed that CCSD told L.B. that S-1 was moving
and would not attend the same school as A.B. during the next school
year—a statement that was true at the time.  (*See, e.g., id.*; ALJ
Order ¶ 8.)   No additional discovery is needed on this point;
examining S-1's records now would not make a difference on this
issue.   The only question is whether there is a genuine issue of
material fact that CCSD made a specific misrepresentation in May 2005
which caused Plaintiffs not to exercise their right to file a Due
Process Request.

Again, Plaintiffs point to no evidence—even in L.B.'s
affidavit—that CCSD specifically told Plaintiffs that S-1 and A.B.
would never again be in the same class.   Based on the undisputed
evidence, CCSD told Plaintiffs the truth regarding S-1's status in
May 2005: S-1 was moving and would not attend the same school as A.B.
during the next school year.  There was no misrepresentation.[22]  While
it appears that none of the parties considered the possibility that
S-1's family would move back into Clarke County and seek to re-enroll
S-1 in a Clarke County school at some later date, the absence of a
specific misrepresentation by CCSD regarding S-1 prevents Plaintiffs
from relying on IDEA's "specific misrepresentation" exception to toll

---

[22]A misrepresentation is a "false or misleading assertion about
something, usually with the intent to deceive."  *Black's Law Dictionary*
1022 (8th ed. 2004).

the statute of limitations.  The ALJ did not err in finding that IDEA's "specific misrepresentation" exception does not apply here.

### 3.  *"Withholding Information" Exception*

Plaintiffs also contend that IDEA's "withholding information" exception to the statute of limitations applies.  To be entitled to this exception, Plaintiffs must show that CCSD withheld information that was "required [under IDEA] to be provided to the parent."  20 U.S.C. § 1415(f)(3)(D).  Plaintiffs contend that CCSD was required under IDEA to provide all of A.B.'s records, including records containing information regarding S-1, to Plaintiffs and that CCSD was required to provide S-1's records to Plaintiffs.  It is undisputed that CCSD refused to provide Plaintiffs with A.B.'s records containing information regarding S-1 and that CCSD refused to provide Plaintiffs with S-1's records or an explanation thereof.  Thus, no discovery is necessary on this point.

Plaintiffs contend that CCSD's refusal to provide the records regarding S-1 tolls the statute of limitations because the information sought was "required [under IDEA] to be provided to" Plaintiffs.  20 U.S.C. § 1415(f)(3)(D).  However, nothing in IDEA or FERPA (or their regulations) contemplates *requiring* a school to disclose confidential information regarding a disabled child's placement or discipline to parents of another child based on the demands of the other child's parents. Again, IDEA and FERPA *prohibit* dissemination of educational records to third parties without

31

consent.  20 U.S.C. § 1417(c); *accord* 20 U.S.C. § 1412(a)(8).  Also, "[i]f any education record includes information on more than one child, the parents of those children have the right to inspect and review *only the information relating to their child* or to be informed of that specific information."  34 C.F.R. § 300.615 (emphasis added). Although IDEA and FERPA *permit* disclosure of confidential information *with* consent, 34 C.F.R. § 300.622(a) *accord* 20 U.S.C. § 1232g(b)(1), nothing requires a school to request that a parent grant permission for the school to disclose her child's confidential education records to another child's parents.  Though S-1's records could have been released pursuant to a lawfully issued subpoena, *see* 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i), the ALJ concluded that Plaintiffs were not entitled to S-1's records because Plaintiffs' purported need for the information did not outweigh S-1's privacy interest in keeping the information confidential.  Based on the foregoing, the Court finds that CCSD was not required to disclose the information Plaintiffs now seek; in fact, CCSD was not *permitted* to disclose any of S-1's records or any of A.B.'s records containing information regarding S-1 absent a lawfully issued subpoena based upon a finding that Plaintiffs' need for the records outweighed S-1's privacy interest in keeping the records confidential.  Therefore, IDEA's "withholding information" exception does not apply to

Plaintiffs' claims, and the ALJ did not err in reaching this conclusion.[23]

For all of the foregoing reasons, the Court concludes that the ALJ correctly found that Plaintiffs' claims arising out of the May 2005 incident are time-barred.

C.   Claims Arising Out of S-1's 2007 Placement

Plaintiffs characterize their 2007 IDEA claim as a "safety-harassment" claim.  A teacher's deliberate indifference to severe and pervasive student-on-student harassment may result in a denial of FAPE.  *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007) (noting that a Title IX claim is available if a student shows that school authorities who knew about but were deliberately indifferent to severe and pervasive student-on-student harassment that results in a denial of educational benefit); *see also Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 200-01 (3d Cir. 2004) (noting that severe and prolonged student-on-student harassment that is ignored by teachers may result in a denial of FAPE).  However, Plaintiffs have pointed to no evidence (or potential evidence) that S-1 harassed A.B. at any time in 2007, much less evidence of severe and pervasive harassment that was ignored by school personnel.  In any event, Plaintiffs argue that CCSD denied A.B. FAPE in 2007 when CCSD assigned S-1 to A.B.'s class

---

[23]For the same reasons, any claims regarding the 2007 events arising from CCSD's refusal to provide L.B. and R.B. with S-1's records are properly resolved in CCSD's favor.

and then, after CCSD implemented a plan to keep the children separated, refused to assign S-1 to a different school. Plaintiffs also contend that CCSD prevented L.B. and R.B. from adequately participating in A.B.'s placement by refusing to provide them with S-1's confidential education records and that the ALJ erred in failing to consider Plaintiffs' testimony that A.B. suffered a regression in his behavior while S-1 was in his class. It is undisputed that CCSD did not provide S-1's confidential education records, so no further discovery is necessary on that point.

With regard to Plaintiffs' assertions concerning the alleged denial of FAPE, the Court notes that Plaintiffs do not seriously dispute that A.B.'s IEP was "reasonably calculated to enable [A.B.] to receive educational benefits," except for the single issue of whether another child's presence in A.B.'s school constitutes an "educational placement" change that negatively impacts A.B.'s education. Plaintiffs' main position appears to be that they need to review S-1's confidential education and social services records to find out whether it is possible for CCSD to provide A.B. with FAPE if S-1 attends school in the same building; presently, Plaintiffs seem to contend that CCSD cannot possibly do so. However, there is absolutely no evidence that A.B. would not receive some educational benefit if he and S-1 attended school in the same building but did not ever see each other. Moreover, Plaintiffs have pointed to no potential evidence on this point, and it is sheer speculation to

34

suggest that discovery of information within CCSD's control would produce such evidence. CCSD asserts in sworn affidavits by its employees that the two children will not be in the same classroom and that CCSD is taking measures to ensure that the children do not have any direct contact with each other at school. Those measures include assigning a dedicated paraprofessional to supervise S-1, having S-1 eat lunch in his classroom, and having S-1 walk to his classroom by a designated hallway.[24] (*See* Admin. R. 53, Stevenson Aff. ¶ 7; Admin. R. 51, Blake Aff. ¶ 8, Jan. 18, 2008; *see also* Admin. R. 73, Ex. 7, Letter from H. Eddy to J. Zimring, Jan. 25, 2008; Admin. R. 73, Ex. 18, Letter from CMS Principal Sherman to R.B. and L.B., Oct. 29, 2007.) Plaintiffs do not seem to dispute that such a plan, if properly implemented, would accomplish their goal of keeping A.B. and S-1 apart. Nonetheless, Plaintiffs appear to contend that A.B. cannot receive FAPE in the same school building as S-1 because they *suspect* that any attempts by CCSD to execute the plan *might* be flawed.

Even if additional discovery *might* result in some evidence that CCSD's arrangement is not infallible and that A.B. *might* accidentally see S-1 on occasion,[25] there is no evidence from Plaintiffs regarding

---

[24] CCSD also disclosed to Plaintiffs the schedule for S-1 as agreed to by S-1's IEP team. (Admin. R. 73, Ex. 7, Letter from H. Eddy to J. Zimring, Jan. 25, 2008.)

[25] There is evidence that A.B. and S-1 were in the school cafeteria for a short period of time on one occasion when S-1 arrived for an IEP meeting with his parents. School staff removed S-1 from the cafeteria, the two

precisely how S-1's presence in the school building affects A.B.'s education.   In the Court's view, Plaintiffs cannot overcome S-1's interest in privacy and obtain confidential education and social services records simply by speculating that if A.B. merely sees S-1 one day, A.B. *might* suffer a regression that *could* be so severe that CCSD cannot provide him with a basic floor of opportunity so long as S-1 is permitted inside the same school building.   Plaintiffs submitted some evidence that A.B. suffered a regression in his behavior while S-1 was in the same classroom (*see* Admin. R. 73, Ex. 1, L.B. Aff. ¶ 30),[26] but that is not enough to show that the presence of S-1 in the same school building under a plan that keeps the boys separated denies A.B. FAPE.   Plaintiffs did not submit to the ALJ or to the Court any expert evidence tending to show that A.B.'s education would be irretrievably disrupted if A.B. saw S-1 for more than X minutes during a given timeframe.   Thus, even if the Court were to permit limited discovery regarding the boys' classroom arrangement (including more detailed information on S-1's IEP than CCSD has already provided), such evidence would still not create a genuine issue of material fact that the mere presence of S-1 in the same school building amounts to a change in placement that denies

---

boys did not interact, and there was no indication that the children saw each other.   (Admin. R. 73, Ex. 7, Letter from H. Eddy to J. Zimring, Jan. 25, 2008.)

[26]CCSD contends that there is no causal connection between S-1's presence and the regression, but this is a fact question.

A.B. FAPE.   Therefore, the Court declines to open up S-1's confidential education and social services records to Plaintiffs.

The Court next turns to the question of whether, based upon the record presented to the ALJ, any genuine issues of material fact exist regarding the denial of FAPE to Plaintiffs because of S-1's presence in the same school in 2007.  Plaintiffs have the burden to show that A.B.'s IEP is not reasonably calculated to provide educational benefits.  *See Schaffer*, 546 U.S. at 51, 62.  Plaintiffs have not met this burden: the record does not establish that A.B. cannot receive adequate educational benefits even if he happens to see S-1 for a short time one day at school.   The record does, however, show that CCSD is taking reasonable measures to keep A.B. and S-1 from having any direct contact with each other and that since the arrangement was implemented the children have only been in the same room once; at the time, S-1 was accompanied by his parents, and he was removed from the room shortly after he arrived.   The record also shows that A.B.'s program was not disrupted; A.B. remained in his classroom with his teacher, while S-1 was moved to a different classroom and a more restrictive environment.   The record simply does not support a conclusion that CCSD unilaterally changed A.B.'s educational placement by refusing to assign S-1 to a different school upon Plaintiffs' demand; as discussed above, there is no evidence that A.B.'s general education program was altered such that he is unable to receive adequate educational benefits from it, and

Plaintiffs point to no potential evidence on this point which might exist in CCSD's control.[27]   For these reasons, the Court concludes that CCSD's refusal to remove S-1 from CMS in 2007 did not deny A.B. FAPE.   The Court further concludes that because there is no evidence that CCSD changed A.B.'s placement in 2007, CCSD did not violate stay put when it refused to assign S-1 to a different school.

## II.   Section 504 and ADA Claims

To make out a claim under Section 504 or the ADA, a plaintiff must show that he was subjected to intentional discrimination because of his disability.[28]   *E.g., N.L. ex rel. Mrs. C. v. Knox County Sch.*, 315 F.3d 688, 695 (6th Cir. 2003); *accord* 29 U.S.C. § 794(a)   ("No otherwise qualified individual with a disability in the United States

---

[27]On the other hand, if CCSD were to remove S-1 from CMS, that *would* be considered a change in S-1's placement because that removal would be based on S-1's behavior, albeit behavior that occurred in May 2005.   *See Bd. of Educ. of Cmty. High Sch. Dist. No. 218*, 103 F.3d at 548. Furthermore, there is evidence that CCSD *did* make some changes to S-1's placement in response to Plaintiffs' requests, including scheduling changes and the assignment of a dedicated paraprofessional to supervise S-1.   Because the Court finds that S-1's presence at CMS under CCSD's plan to keep the two children separated is not a change to A.B.'s educational placement, the Court need not consider whether CMS could move S-1 for disciplinary purposes if his mere presence in the school was likely to deny A.B. FAPE.

[28]Section 504 and ADA claims are evaluated under the same standards. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 n.3 (11th Cir. 2001).   Therefore, the Section 504 and ADA claims may be addressed together.   An action under the equal protection clause also requires a showing of intentional discrimination.   *E.g., Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313-14 (11th Cir. 2006).   It is not entirely clear whether Plaintiffs are attempting to raise an equal protection claim, but to the extent they are, the Court will address that claim together with the ADA and Section 504 claims, which also require a showing of intentional discrimination.

. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").   To prove intentional discrimination in the education context, Plaintiffs must show "something more than a simple failure to provide" FAPE. *N.L.*, 315 F.3d at 695; *accord W.C. ex rel. Sue C. v. Cobb County Sch. Dist.*, 407 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2005); *cf. Doe v. Ala. State Dep't of Educ.*, 915 F.2d 651, 666 (11th Cir. 1990) (where Section 504 claims are identical to IDEA claims, there is no need to address Section 504 claims).   Rather, Plaintiffs must show that the student was discriminated against *because of* his disability. *W.C.*, 407 F. Supp. 2d at 1364.   Such a showing can be made by showing that a school "acted in bad faith or with gross misjudgment by departing substantially from 'accepted professional judgment, practice or standards as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment.'" *M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 889 (8th Cir. 2008) (alteration in original) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323

(1982))).  Thus, to prevail on their Section 504 and ADA claims, Plaintiffs must demonstrate that CCSD acted in bad faith or with gross misjudgment that resulted in a denial of FAPE to A.B. or that CCSD in bad faith or with gross misjudgment failed to provide A.B. a reasonable accommodation.

As they were required to do under 20 U.S.C. § 1415(*l*), Plaintiffs made Section 504 and ADA claims in their Due Process Request, and the ALJ specifically addressed Plaintiffs' Section 504 and ADA claims in the ALJ Order.  The Court must therefore determine whether the ALJ erred in granting CCSD's motion for summary determination on these claims.  The ALJ concluded that Plaintiffs had not made out a claim under Section 504 or the ADA because claims arising out of the May 2005 incident were time-barred (ALJ Order at 13 n.7) and Plaintiffs had not demonstrated intentional discrimination to support claims arising out of the 2007 events (ALJ Order at 13).  The Court agrees.

The statute of limitations for Plaintiffs' ADA and Section 504 claims is two years.  *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409-10 (11th Cir. 1998) (applying Georgia's personal injury statute of limitations to Section 504 and ADA claims).  Plaintiffs' claims under ADA and Section 504 arising out of the May 2005 incident accrued when Plaintiffs were informed of the alleged discriminatory act.  *See id.*  With regard to the May 2005 incident, Plaintiffs allege that A.B. "had his placement altered and abused by the actions

40

permitted by [CCSD] in 2005" (Compl. ¶ 107), that CCSD failed to provide a safe environment for A.B. in which A.B. could receive FAPE, and that CCSD did not provide Plaintiffs with sufficient information concerning A.B. or S-1 in 2005 (*E.g.*, Compl. ¶¶ 109-112). As discussed above, Plaintiffs knew in May 2005 about S-1's inappropriate contact with A.B., they believed that the presence of S-1 in the same classroom prevented A.B. from receiving FAPE, and they knew that CCSD refused to provide them with any records concerning S-1. Therefore, and for the same reasons Plaintiffs' IDEA claims arising out of the 2005 incident are time-barred, Plaintiffs' Section 504 and ADA claims are also barred by the two-year statute of limitations.

As to Plaintiffs' claims arising out of the 2007 events, Plaintiffs contend that CMS with S-1 in attendance anywhere in the building is an "undefined and unsafe learning environment" (Admin. Compl. ¶ 77) and that "[t]he presence of S-1 and the actions of CCSD created a hostile and harassing educational environment for A.B." (Compl. ¶ 88; Admin. Compl. ¶ 73). These claims are essentially the same as Plaintiffs' IDEA claims that the 2007 arrangement cannot provide A.B. with FAPE. The ALJ found, and the Court agrees, that Plaintiffs have not alleged any facts that show intentional discrimination against A.B. because of his disability, nor have they presented evidence to create a genuine issue of material fact on this

point.[29]   Furthermore, as discussed above, Plaintiffs have not presented sufficient evidence (or pointed to sufficient additional evidence) to show a simple denial of FAPE or failure to accommodate reasonably A.B.'s disability, much less evidence of "something more." Summary determination was proper on the ADA and Section 504 claims.

## III. Federal Constitutional Claims

IDEA allows plaintiffs to pursue remedies available under the United States Constitution. 20 U.S.C. § 1415(*l*).  IDEA also subjects such claims to an exhaustion requirement.  *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006).  "Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings."  *Id.*  It appears to the Court that the sum total of Plaintiffs' constitutional allegations before the ALJ appear in a footnote in their administrative complaint: Plaintiffs assert that their "other claims or causes of action under federal . . . law" include "federal and

---

[29]Plaintiffs allege that CCSD took action "based on and . . . in light of A.B.'s status as a person with a disability[.]" (Compl. ¶ 81.)  This summary allegation does not obviate the need for Plaintiffs to allege specific facts (and put forth specific evidence in response to a motion for summary determination) to show that CCSD took the actions it did because of A.B.'s disability.  *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (to state a claim, a complaint must contain "enough factual matter (taken as true) to suggest" the required element).  Any argument by Plaintiffs that they have produced no evidence in support of their claims because they have been denied discovery is also rejected.    Plaintiffs have pointed to no evidence that they even subjectively believe may exist in support of their claims, and they are not entitled to conduct a discovery fishing expedition based on speculation that they may catch something.

state constitutional claims." (Admin. Compl. at 1 & n.1.) The administrative complaint does not identify which constitutional provision(s) CCSD allegedly violated, nor does it contain any additional facts related to Plaintiffs' constitutional claims. The ALJ did not address any constitutional claims in the ALJ Order.

Even if the Court were to assume that the vague footnote in the administrative complaint was sufficient to put the issue before the ALJ and exhaust administrative remedies, Plaintiffs' federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, still fail.[30] First, Georgia's two-year personal injury statute of limitations applies to Plaintiffs' § 1983 claims. *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008). For the same reasons Plaintiffs' IDEA, Section 504 and ADA claims arising out of the 2005 incident are time-barred, any § 1983 claims are also barred by the two-year statute of limitations. Second, any procedural due process claim arising out of the alleged 2007 "change" in A.B.'s placement without notice is ill-founded because, as discussed above, the Court concludes that CCSD did not change A.B.'s placement. Thus, Plaintiffs are unable to show the deprivation of a constitutionally

---

[30]Even in their Complaint before this Court, Plaintiffs do not cite which provision of the Constitution they allege was violated by CCSD. The Court is loath to invent arguments for the parties, but reading the Complaint in the light most favorable to Plaintiffs, the Court construes Plaintiffs' claim for "Deliberate Indifference and Constitutional Violations" (Compl. ¶¶ 137-143) as a claim under the Fourteenth Amendment for violations of procedural due process, substantive due process and equal protection. As noted *supra* note 28, any equal protection claims fail because Plaintiffs have not shown intent to discriminate because of A.B.'s disability.

protected interest, a required element of a procedural due process claim. *See, e.g., Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006) ("[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.") (internal quotation marks omitted).  Third, Plaintiffs have not alleged or proffered sufficient facts to establish that CCSD's conduct in permitting S-1 to attend CMS (under a plan that is designed to keep A.B. from seeing him) amounts to deliberate indifference to a risk of harm, so any substantive due process claim based on the 2007 placement fails. *Cf. H.A.L. ex rel. Lewis v. Foltz*, 551 F.3d 1227, 1232 (11th Cir. 2008) (per curiam) (finding that foster children could state a substantive due process claim by showing that foster care system personnel knew about but took no action regarding child-on-child sexual abuse in a foster home).  For all of these reasons, Plaintiffs' constitutional claims fail.

**III. State Law Claims**

Having found that the ALJ properly granted summary determination on Plaintiffs' IDEA, Section 504 and ADA claims and that Plaintiffs' federal constitutional claims fail for the same reasons, the only claims left in this action are state law claims under the Georgia Constitution and under Georgia laws requiring school personnel to make reports to DFACS under certain circumstances.  In accordance

with 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims.  Because the Court no longer has subject matter jurisdiction over this action and has declined to exercise supplemental jurisdiction, Plaintiffs' state law claims are remanded to the Superior Court of Clarke County.  *See* 28 U.S.C. § 1447(c).

CONCLUSION

For the reasons set forth above, CCSD's Motion to Dismiss (Doc. 3) is granted as to Plaintiffs' federal claims, and judgment shall be entered in favor of Defendant.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which are remanded to the Superior Court of Clarke County, Georgia. Plaintiffs' Motion to Admit Additional Evidence (Doc. 28) is denied.

IT IS SO ORDERED, this 30th day of March, 2009.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE